UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY CESAREO,<br><br>        *Plaintiff*,<br><br>v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, LUIS PULIDO, SAMUEL HARRIS, PASQUALE BUZZELLI,<br><br>        *Defendants*. | Civil Action No. 25-00632<br><br>OPINION<br><br>May 8, 2025 |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court upon *pro se* Plaintiff Anthony Cesareo's Emergency Motions for Temporary Restraining Orders (ECF 19, "Motion 1" or "Mot. 1"; ECF 22, "Motion 2" or "Mot. 2") (collectively, the "Motions") against District Council 9 ("DC 9"), International Union of Painters and Allied Trades ("IUPAT"), and the Port Authority of New York and New Jersey ("Port Authority") (collectively, "Defendants"). The Court has decided these Motions upon Plaintiff's submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons set forth below, Plaintiff's Motions are **DENIED**.

  **WHEREAS** Plaintiff moves for a temporary restraining order prohibiting Defendants from enforcing or collecting an $11,000 disciplinary fine issued against Plaintiff following a DC 9 Trial Board hearing at which Plaintiff was found guilty of violating certain provisions of DC 9's bylaws and IUPAT's Constitution. (Mot 1. at 1 and Ex. 5.) Plaintiff also requests an order demanding Defendants to show cause why a preliminary injunction should not be issued. (*Id*. at 3.) Plaintiff argues that "[h]e was never a full member of District Council 9, never took an oath of obligation,

1

never signed union membership forms, and was explicitly informed by DC 9's own representative, Adjen Suca, on September 12, 2024, that he had no union member number" such that he "[w]as not subject to union trial jurisdiction." (*Id*. at 1-2.) Plaintiff further argues that the disciplinary proceeding and subsequent fine were "predetermined, retaliatory, and devoid of due process." (*Id*. at 2.) In Motion 2, Plaintiff similarly requests a temporary restraining order enjoining the Port Authority "from taking any adverse action, including suspension, discipline, or termination, in retaliation for his protected activity;" a "stay of any pending disciplinary action or internal proceeding until further order of the Court;" and an order directing Defendants "to provide written assurance of non-retaliation pending resolution of the litigation." (Mot. 2 at 1-4.) Plaintiff alleges that a May 6, 2025 letter substantiating sexual harassment allegations against Plaintiff (which he asserts are false) amounts to "retaliation and pretext" and that he will be subject to "irreparable harm" if the Port Authority is allowed to proceed with further action. (*Id*.); and

**WHEREAS** Plaintiff argues that he is likely to succeed on the merits of his claim against DC 9 and IUPAT because he is not a full union member and not subject to the union's bylaws and constitution. (Mot. 1 at 2.) Plaintiff offers no argument that he is likely to succeed on the merits of his claim against the Port Authority. (*See generally* Mot. 2.) Plaintiff also argues that if Motion 1 is not granted, he will suffer "imminent financial hardship from attempted enforcement or collections," "ongoing reputational damage and fear of retaliation at his workplace," and "emotional distress and humiliation." (Mot. 1 at 3.) In Motion 2, Plaintiff alleges he will suffer similar reputational, professional, and emotional harms if his requested relief is not granted. (Mot. 2 at 3.) Plaintiff submits that the balance of hardships falls in his favor because "Defendants lose nothing by being barred from enforcing an unconstitutional fine," while Plaintiff "faces loss of income, career stigma, and legal standing if this Court does not intervene." (Mot. 1 at 3.) Plaintiff

states that the public interest "strongly supports injunctive relief" because "[t]his case implicates core First Amendment protections, due process, and labor rights" and "[p]ublic interest strongly favors safeguarding those who exercise lawful rights from organizational retaliation" (*Id.*) Plaintiff makes no arguments about the balance of hardships or the public interest in Motion 2. (*See generally* Mot. 2.); and

**WHEREAS** granting a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." *Mallet & Co. v. Lacayo,* 16 F.4th 364, 391 (3d Cir. 2021). To determine whether to grant such a remedy, the Court considers four factors: (1) whether the movant has shown "a reasonable probability of eventual success in the litigation[;]" (2) whether the movant "will be irreparably injured . . . if relief is not granted[;]" (3) "the possibility of harm to other interested persons from the grant or denial of the injunction[;]" and (4) whether granting the preliminary relief will be in "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of showing its entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)); and

**WHEREAS** a party seeking this extraordinary equitable remedy must demonstrate that the threatened harm would impair the court's ability to eventually grant an effective remedy. *Delaware State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.,* 108 F.4th 194, 201 (3d Cir. 2024) (describing irreparable harm as conduct that could "destroy the property under dispute, kill the other party, or drive it into bankruptcy"). The Third Circuit has cautioned district courts against granting preliminary injunctions that are veiled requests to evaluate the merits of the case expeditiously, because "a rushed judgment is a dangerous one;" *id.* at 203; and

**WHEREAS** Plaintiff has not met his burden to "show both a likelihood of success on the merits and a probability of irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90-91 (3d Cir. 1992). Plaintiff alleges he will succeed on the merits of Motion 1 because he is "not a union member" and "non-members cannot be disciplined by a union." (Mot. 1 at 2.) While these two assertions may be generally true, they do not amount to a sufficient demonstration of Plaintiff's likelihood of success to warrant granting the extraordinary relief Plaintiff seeks. Plaintiff submits emails with a union representative that purport to substantiate his claim that his is not a dues-paying union member (*id*. Exs. 2 and 3), but he offers "no evidence that without a preliminary injunction, the District Court will be unable to decide the case or give [him] meaningful relief." *Del. State Sportsmen's Ass.*, 108 F.4th at 205. Plaintiff alleges he will face "imminent financial hardship" from DC 9's collection of the $11,000 fine (Mot. 1 at 3), but an injury that is monetary in nature does not meet the standard of irreparable harm. *See Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484–85 (3d Cir. 2000) ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.") The other harms Plaintiff articulates in both Motions, such as reputational damage and emotional distress are speculative in nature. *Id*. at 488 ("we have also insisted that the risk of irreparable harm must not be speculative"). In Motion 2, Plaintiff cites one case suggesting that he is being deprived of his First Amendment rights, but offers no factual allegations or other claims that show how he has lost these freedoms. (Mot. 2 at 3.) Plaintiff cites another case for the proposition that "disciplinary actions impacting employment are not compensable by money damages alone," but the case he cites is inapposite to this matter, and Plaintiff offers no facts or arguments suggesting that his claim against the Port Authority cannot be resolved absent a restraining order; and

**WHEREAS** the balance of hardships and the public interest also weigh against issuing a temporary restraining order or preliminary injunction here, because Plaintiff has not demonstrated that he has exhausted internal union remedies. "Congress enacted the LMRDA to remedy abuses in union elections without departing from the 'longstanding congressional policy against unnecessary governmental interference with internal union affairs.'" *Solis v. Local 234, Transport Workers Union*, 585 F.3d 172, 176 (3d Cir. 2009) (quoting *Hodgson v. Local 6799, United Steelworkers of Am.*, 403 U.S. 333, 338 (1971)). "Congress thus included in the Act a requirement that 'union members protesting the conduct of elections exhaust their internal union remedies before complaining to the Secretary....'" *Id.* (citing *Hodgson*, 403 U.S. at 336; 29 U.S.C. § 482(a)). Plaintiff does allege that he is not a member of the union, but the principle articulated in these cases still applies: before seeking a remedy from the federal government, Plaintiff should exercise his rights under the IUPAT Constitution and "appeal the decision to the General Executive Board pursuant to Section 277(b)." (Mot. 1 at Ex. 5.) Thus, the public interest weighs in favor of Plaintiff exhausting internal union remedies. *Sickman v. Commc'ns Workers of Am.*, No. 99-5582, 1999 WL 1045145, at *3–4 (E.D. Pa. Nov. 16, 1999), *aff'd*, 230 F.3d 1349 (3d Cir. 2000). Furthermore, while Plaintiff may be right that he faces some hardships if the Court does not intervene, he is wrong that DC 9 and IUPAT would "lose nothing" if the Court granted Plaintiff's Motion. (Mot. 1 at 3.) As discussed above, if the federal government were to intervene to stop the union from enforcing the fine, the union would lose its organizational autonomy due to "unnecessary government interference with internal union affairs." *Solis*, 585 F.3d at 176. The same analysis applies to Motion 2, even though Plaintiff has not submitted any arguments about the balance of hardships or public interest. Plaintiff claims he has "exhausted all internal options" to fight the sexual harassment allegations, but this is facially implausible, as the substantiation letter was

5

issued on May 6, 2025, and the letter specifies that "if you believe that your rights under the EEO Policy and/or related policies are being violate OR that you are being retaliated against" Plaintiff is free to raise the matter with the EEO. (Mot. 2 at Ex. 1.) Plaintiff submits a series of emails documenting his correspondence with various Port Authority employees regarding these matters, but all of these emails predate the substantiation letter and show that, rather than exhaust his internal options, Plaintiff has chosen to seek relief from this Court instead. (*Id*. at Exs. 2-10.)

Accordingly, Plaintiff's Emergency Motion for a Temporary Restraining Order in **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc:   Cathy L. Waldor, U.S.M.J.
      Parties