<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY CESAREO, | |
| *Plaintiff*, | Civil Action No. 25-632 |
| v. | |
| PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., | OPINION |
| *Defendants*. | December 31, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on *pro se* Plaintiff Anthony Cesareo's Motion for Declaratory Judgment (ECF 47, "MDJ"), Motion for Protective Order to Bar Involvement or Interference by Non-Party John Drew (ECF 52, "Motion for Protective Order" or "MPO"), and Emergency Motion to Stay Arbitration (ECF 53, "Motion to Stay Arbitration" or "MSA"). These Motions were all filed before Defendants received service of process, so they are all unopposed. The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motions are **DENIED**.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Plaintiff's allegations that his employer, the Port Authority of New York and New Jersey ("Port Authority"), and the individual managers Luis Pulido, Samuel Harris, and Pasquale Buzzelli, violated several laws by failing to accommodate his disability, denying him overtime opportunities, creating a hostile work environment, retaliating against him for filing complaints with the Equal Employment Opportunity Commission ("EEOC"), and discriminating

1

against him on the basis of his race. (ECF 14-1 at 1, "First Amended Complaint" or "FAC.") Plaintiff also asserts retaliation claims against union entities Local 806, District Council 9 New York ("DC 9 NY"), and the International Union of Painters and Allied Trades, and John Drew and Robert White, individuals employed by or otherwise affiliated with the unions. (*Id*.) Specifically, Plaintiff alleges that "Defendant Port Authority failed to accommodate Plaintiff's disability following neck surgeries in 2020 and 2022." (*Id*. at 2.) Plaintiff also alleges he was "denied overtime opportunities from March 2021 to September 2021 due to disability." (*Id*.) Plaintiff alleges that he was "verbally harassed and had his vehicle wrongfully taken by Samuel Harris, contributing to a hostile work environment." (*Id*.) Plaintiff further alleges that "[a]fter filing an EEOC complaint in May 2022, Plaintiff was retaliated against, including pressure to sign a 'Last Chance Agreement.'" (*Id*.) Plaintiff also alleges that "Robert White discussed confidential grievances with others and filed charges against Plaintiff in retaliation for protected activities." (*Id*.) Plaintiff asserts that "Defendants Local 806, DC 9 NY, and John Drew continued with a union disciplinary hearing despite being informed of Plaintiff's no-work medical status." (*Id*.) In Plaintiff's view, "[t]he union hearing, scheduled for April 23, 2025, is retaliatory and inflicts irreparable harm." (*Id*.) Plaintiff states that he "has been subjected to unequal employment conditions and targeted union retaliation based on his disability and race.

Plaintiff filed the Complaint in this case on January 21, 2025 (ECF 1-1), and he filed the First Amended Complaint on April 10, 2025 (FAC). In the FAC, Plaintiff asserts eight causes of action, as follows: (1) failure to accommodate disability against the Port Authority and Defendants Pulido and Buzzelli; (2) unequal terms and conditions of employment against the Port Authority and Defendant Harris; (3) hostile work environment against the Port Authority and Defendant Harris; (4) retaliation against all Defendants; (5) racial discrimination against the Port Authority

and Defendant Harris; (6) civil conspiracy against Defendant White, Local 806, DC 9 NY, and Defendant Drew; (7) abuse of process against Defendant White, DC 9 NY, and Defendant Drew; and (8) defamation against Defendant White.  (*Id*. at 2-3.)  Plaintiff seeks relief in the form of $100,000 in compensatory damages; $250,000 in punitive damages, an injunction "ordering defendants to cease retaliation, cancel union charges, and implement anti-discrimination policy and ADA training[;]" and "[r]easonable costs and any other relief deemed just by the Court.  (*Id*. at 3.)

Since filing the original Complaint, Plaintiff has filed many motions: six motions for preliminary injunctions and/or temporary restraining orders (ECF 5; ECF 16; ECF 19; ECF 22; ECF 28; ECF 41); four motions to amend or supplement the Complaint (ECF 13; ECF 14; ECF 44; ECF 46); three motions to conduct early discovery (ECF 25; ECF 42; ECF 43); three motions requesting judicial notice of certain facts and information (ECF 36; ECF 38; ECF 54); two motions for reconsideration (ECF 26; ECF 35); two motions for protective orders (ECF 39; ECF 52); two motions for declaratory judgments (ECF 37; ECF 47); one motion to compel a hearing (ECF 48); one motion to appoint pro bono counsel (ECF 49); and one motion to stay arbitration proceedings (ECF 53).  The Court has addressed several of these motions in Opinions and Orders.  (ECF 18; ECF 21; ECF 23; ECF 24; ECF 27; ECF 33; ECF 34; ECF 51.)  Plaintiff filed all these motions before Defendants the Port Authority, Pulido, Buzzelli, and Harris received service of process on June 23, 2025.  (ECF 56.)  Plaintiff has not yet completed service of process on Defendants Local 806, DC 9 NY, the International Union of Painters and Allied Trades, Drew, and White.

On July 15, 2025, Defendants the Port Authority, Pulido, Buzzelli, and Harris filed an Answer denying all of the substantive allegations in the FAC, and asserting ten defenses, to wit: (1) that the Complaint fails to state a claim upon which relief can be granted; (2) that Plaintiff may

3

be precluded from suit because he may have failed to comply with the statutory prerequisites to suit; (3) that Plaintiff may be precluded from suit because he may have failed to exhaust necessary administrative remedies before filing this action; (4) that Plaintiff, by his own actions, contributed to any damages he allegedly sustained; (5) that Plaintiff unreasonably failed to properly take advantage of anti-discrimination policies provided by the Port Authority; (6) that any actions undertaken by the Port Authority concerning Plaintiff were legitimate, non-discriminatory, and non-retaliatory; (7) that Defendants' alleged action were not a proximate cause of any alleged injury suffered by Plaintiff; (8) that Plaintiff has not suffered any economic damages and he has failed to properly mitigate; (9) that Plaintiff's claims for punitive damages are barred by applicable law; and (10) that Plaintiff's claims against the Port Authority for liability and damages under the principle of *respondeat superior* lack sufficient factual and legal bases. (*See generally* ECF 57.) Defendants request a judgment dismissing the FAC in its entirety and granting them attorney's fees and costs. (*Id*. at 4.)

      Now pending before the Court are the Plaintiff's Motion for Declaratory Judgment, Motion for Protective Order, and Emergency Motion to Stay Arbitration. First, Plaintiff seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that "[t]he Port Authority of New York and New Jersey violated Plaintiff Anthony Cesareo's constitutional rights under the Fifth and Fourteenth Amendments by suspending him from employment without formal charges or a Loudermill hearing, and by excluding him from a public board meeting based on undisclosed accusations. (MDJ at 4.) Second, Plaintiff seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c), "barring John Drew from any further involvement or receipt of information relating to Plaintiff's employment or litigation;" prohibiting "union representatives Ajden Suca, Wendell Shepherd, or any others from copying or forwarding Plaintiff's documents

4

or communications to Mr. Drew;" and barring "Mr. Drew from engaging in any direct or indirect communication with Plaintiff concerning this litigation or his employment status." (MPO at 4.) Third, pursuant to Federal Rule of Civil Procedure 65, Plaintiff asks the Court to "[i]ssue an emergency stay of the arbitration proceedings related to Docket No. 2054 [and] enjoin the Port Authority and any affiliated union or management agents from proceeding with arbitration or disciplinary hearings until this federal action is resolved." (MSA at 4.)

## II. LEGAL STANDARD

### a. Motion for Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). To satisfy the case or controversy requirement "an action must present "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned judicial resolution." *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir.1992) (quoting International Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir.1987)).

"Whether to grant relief pursuant to [S]ection 2201 is vested in the court's discretion." *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993). "[T]he remedy of a declaratory judgment is discretionary even where a justiciable controversy exists." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir.1987).

### b. Motion for Protective Order

"Under Rule 26(c), [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending, whereupon [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. The cornerstone of this inquiry is Rule 26(c)'s good cause standard." *Hancock v. Credit Pros Int'l Corp.*, No. 22-2826, 2021 WL 2948154, at *7 (D.N.J. July 13, 2021) (citing *Robotic Parking Sys. v. City of Hoboken*, 2010 U.S. Dist. LEXIS 27180, at *5 (D.N.J. Jan. 19, 2010) and *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005)) (internal quotations omitted). The Third Circuit elaborated that "there is good cause when a party shows that disclosure will result in a clearly defined, specific and serious injury[,] but that broad allegations of harm are not sufficient to establish good cause[.]" *Shingara*, 420 F.3d at 306. "[T]he party seeking protection has the burden of showing that there is good cause for it." *Id.* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (citations omitted).

    **c. Motion to Stay Arbitration**

Plaintiff moves to stay arbitration pursuant to Federal Rule of Civil Procedure 65, so the Court will treat the Motion to Stay Arbitration as a motion for a temporary restraining order. Granting a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 is an "extraordinary remedy" that "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). To determine whether to grant such a remedy, the Court considers four factors: (1) whether the movant has shown "a reasonable probability of eventual success in the litigation[;]" (2) whether the movant "will be irreparably

injured . . . if relief is not granted[;]" (3) "the possibility of harm to other interested persons from the grant or denial of the injunction[;]" and (4) whether granting the preliminary relief will be in "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of showing its entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

### III. ANALYSIS

#### a. Motion for Declaratory Judgment

In his Motion for Declaratory Judgment, Plaintiff asserts that, on May 7, 2025, he "was suspended from employment without receiving any formal charges or specifications." (MDJ at 2.) He also states that as of May 23, 2025 (the date he filed the Motion for Declaratory Judgment), "no Loudermill hearing has been held or scheduled." (*Id.*) Plaintiff also complains that in May 2025, Christopher Wolff, the Deputy Director of the Port Authority's Labor Relations Department, sent Plaintiff an email stating "'You are not permitted to attend the Board Meeting due to the serious and ongoing charges pending against you.'" (*Id.* at 2-3.) Plaintiff includes the email from Mr. Wolff as an exhibit to the Motion for Declaratory Judgment, and in the email, Mr. Wolff states that "[i]n light of the serious ongoing charges against you, we cannot afford you access to 4 World Trade Center for the Board meeting. You may view the meeting virtually by following the instructions" in a link provided in the email. (ECF 47-1.)

In support of his Motion for Declaratory Judgment, Plaintiff argues that the "Port Authority's refusal to issue charges while enforcing the suspension, and simultaneously excluding Plaintiff from public proceedings, constitutes a clear violation of procedural due process under the

7

Fifth and Fourteenth Amendments" because, under the Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), Plaintiff is entitled to "written notice of charge" and "a pre-suspension opportunity to respond." (MDJ at 3.) Plaintiff also argues that his exclusion "from a public board meeting based on secret accusations violated his: right to petition the government, and right to access public forums, both protected under the First Amendment." (*Id.*) Plaintiff cites *Carey v. Piphus*, 435 U.S. 247 (1978) for the proposition that "due process violations are compensable even absent other damages[,]" and he cites *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266 (2016) for the proposition that "retaliation for perceived exercise of constitutional rights is actionable[.]" (*Id.* at 4.)

Absent some motion to the alternative by Defendants, there is no dispute on the record that this case presents a live and justiciable controversy; Plaintiff has made certain allegations against Defendants, and Defendants have denied these allegations. (*See generally* FAC; Answer.) The procedural posture of this case warrants that the Court deny Plaintiff's Motion for Declaratory Judgment *because* this case is a live controversy and virtually every fact is, at present, in dispute. Plaintiff's Motion for Declaratory Judgment is effectively a motion for summary judgment in disguise, insofar as it asks the Court to issue a final judgment on whether Defendants infringed upon Plaintiff's constitutional rights. *See Deitrick v. Costa*, No. 06-1556, 2019 WL 4412977, at *2 (M.D. Pa. Sept. 15, 2019) (affirming denial of pretrial motions that "were, in reality, additional Motions for Summary Judgment in disguise"). As mentioned *supra*, the Motion for Declaratory Judgment was filed before Defendants were even served with process or otherwise notified that they were party to this lawsuit, and indeed several Defendants (Local 806, DC 9 NY, John Drew, and Robert White) still have not been served. Moreover, the email attached as an exhibit to Plaintiff's Motion for Declaratory Judgment appears to contradict his contention that he was

denied outright from participating in the union board meeting, as Mr. Wolff offered a link for Plaintiff to participate virtually. (ECF 47-1.) To make a determination that would essentially attach liability to Defendants for their alleged actions before subjecting those alleged actions to a meaningful factfinding review would be to attempt to correct one alleged due process violation with another, especially where there appear to be inconsistencies in Plaintiff's characterization of those very actions. The Court thus cannot make the declaration that Plaintiff requests at this point in this litigation and the Motion for Declaratory Judgment is hereby **DENIED**.

### b. Motion for Protective Order

In his Motion for Protective Order, Plaintiff alleges that on May 16, 2025, Defendant John Drew, "a private executive officer of District Council 9," "placed a hostile and mocking phone call to Plaintiff, dismissing [Plaintiff's] legal concerns and referring to the situation as 'a game.'" (MPO at 1-2.) Plaintiff alleges that during this call, Defendant Drew's tone was "antagonistic and undermining, contributing to Plaintiff's psychological distress during active litigation." (*Id*. at 2.) Plaintiff also alleges that "union-side actors…have repeatedly and improperly forwarded internal communications involving Plaintiff's suspension and discipline to Mr. Drew, over Plaintiff's clear objections[.]" (*Id*.) Plaintiff specifically alleges that these union actors "improperly forwarded" a "Suspension Extension Memorandum issued by [Defendant] Luis Pulido" to Defendant Drew, which, in Plaintiff's view, constitutes "a breach of confidentiality and misuse of protected disciplinary communications." (*Id*.)

In support of his Motion for Protective Order, Plaintiff argues that "Mr. Drew's behavior is completely extrajudicial, and his access to internal matters is neither lawful nor contractual." (*Id*. at 3.) Plaintiff cites *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. No. 310 v. N. L. R. B.*, 587 F.2d 1176, 1182 (D.C. Cir. 1978) for the proposition that "[a] union's

9

authority to act on behalf of employees must stem from a lawful grant of representation; actions by persons or union outside of the bargaining unit have no binding effect[,]" but the Court is unable to locate this language in the opinion. Plaintiff also argues that "[t]he phone call on May 16, 2025, and the improper forwarding of the suspension memo reveal a pattern of harassment, intimidation, and interference." To support this argument, Plaintiff cites *Doe v. Bogan*, 93 F.3d 544, 551 (9th Cir. 1996) for the proposition that "[w]hen speech crosses the line into harassment and undermines judicial proceedings, courts may act to restrict it[,]" but it appears, after research and review by the Court, that this case does not exist as cited.[1] Plaintiff also cites *Welling v. Alexy*, 155 F.R.D. 654, 657 (N.D. Cal. 1994) for the proposition that "[i]rreparable harm may be found where the conduct at issue threatens psychological or reputational damage and no adequate legal remedy exists[,]" but the Court is unable to locate this language in the opinion.

Normally, courts faced with motions for protective orders under Rule 26(c) determine whether the movant has shown good cause for the motion to be granted by "balancing the interests of the public and the parties" and considering the following factors:

> "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public."

*Shingara*, 420 F.3d at 306. Here, the need to engage in this balancing test is obviated because Plaintiff's Motion for Protective Order suffers from a peculiar tension in that it seeks to bar from

---

[1] The Court was unable to locate the case cited by Plaintiff on any legal database or by conducting searches online.

10

this litigation a party, John Drew, whom Plaintiff himself brought into this litigation by suing him.[2] (*See* FAC) (adding John Drew as a Defendant in this case)  Plaintiff's Rule 26(c) motion thus collides with Rule 26(b)'s mandate that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. Proc. 26(b).  Plaintiff made John Drew a party, and Plaintiff has not shown good cause why this Court should abridge the party's right to discovery.

Beyond this fundamental tension, good cause does not exist because Plaintiff's Motion for Protective Order lacks support in existing case law, and again, Plaintiff's own submissions appear to contradict the allegations he makes in his Motion.  For example, Plaintiff alleges that John Drew "placed a hostile and mocking phone call" to Plaintiff regarding this litigation.  (MPO at 2.)  To support this assertion, Plaintiff includes as an exhibit to the Motion for Protective Order a "transcript" of the alleged phone call.  (ECF 52-4, "Transcript of May 16, 2025 Call.")  From the transcript, it appears that Plaintiff placed the call to Defendant Drew, not the other way around. (*Id.*) ("Hi, John, this is Anthony Cesareo calling.")  These inconsistencies in Plaintiff's representations to the Court erode his credibility and undermine his argument that there is good cause for the Court to issue the protective relief Plaintiff seeks.

For these reasons, the Motion for Protective Order is hereby **DENIED**.

### c. Motion to Stay Arbitration

---

[2] Plaintiff notes in the Motion for Protective Order that he "is currently awaiting a ruling on his Second Amended Complaint[,]" to wit, whether he will be allowed to file it. (MPO at 1.)  The issue of whether Plaintiff will be allowed to file a Second Amended Complaint does not bear on the Court's analysis of the instant Motion for Protective Order, because John Drew is also listed as a defendant in the proposed Second Amended Complaint.  (*See* ECF 44-1, "Proposed Second Amended Complaint.")

11

In his Motion to Stay Arbitration, Plaintiff "seeks emergency relief to prevent the commencement of an arbitration proceeding that has been strategically revived after nearly three years of dormancy[.]" (MSA at 1.) The arbitration proceedings at issue stem from charges that the Port Authority allegedly issued against Plaintiff in October 2022 under Docket No. 2054. (*Id*. at 2.) Plaintiff alleges that three years later, after Plaintiff filed the Complaint in the instant case, he "received an email from union attorney Wendell Shepherd proposing an arbitration hearing for November 6, 2025, regarding the long-dormant charges in Docket No. 2054." (*Id*.) Plaintiff alleges that this email came one day after he was issued "an entirely new set of disciplinary charges and specifications, related to separate alleged conduct, which likewise appear retaliatory." (*Id*.) In Plaintiff's view, "[t]he sudden and closely timed reactivation of Docket No. 2054 and issuance of new charges demonstrate a pattern of escalating adverse employment actions in direct response to Plaintiff's protected activity." (*Id*.)

In support of these contentions, Plaintiff argues that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket[,]" citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). (*Id*.) Plaintiff argues that "allowing arbitration to proceed while this matter is pending would risk conflicting determinations, undermine this Court's jurisdiction, and impose unnecessary hardship on Plaintiff." (*Id*.) Plaintiff further argues that, if the arbitration proceeds, he may "suffer reputational damage and job-related consequences from potentially biased or inconsistent findings; [his] federal retaliation claims may be undercut by parallel proceedings lacking constitutional safeguards; [and] the Port Authority and its agent may attempt to use the arbitration outcome to insulate themselves from liability." (*Id*. at 3.) Plaintiff cites *Elrod v. Burns*, 427 U.S. 347, 373 (1976) for the proposition that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

irreparable injury." Plaintiff then argues that "[t]he EEOC's finding of retaliation, combined with the suspicious timing of the revived and new charges, supports a prima facie case of continued retaliatory conduct." (*Id.*) Plaintiff alleges that the close timing of the new charges with the resurrection of the old charges "violates the standard set in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)" that "[a] materially adverse action is any action that might dissuade a reasonable worker from making or supporting a charge of discrimination."[3] (*Id.*) Finally, Plaintiff argues that he was "not afforded a meaningful opportunity to respond [to the charges in Docket No. 2054] prior to arbitration scheduling, particularly while on medical leave and under restrictions." (*Id.* at 4.) In Plaintiff's view, this violates the holding of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) that the "right to due process is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." (*Id.*)

The first prong of the analysis of this Motion is whether Plaintiff has demonstrated a likelihood of success in this litigation. *Reilly*, 858 F.3d at 176. Reviewing the motions already filed and denied in this case, it is not clear to the Court that Plaintiff has demonstrated a reasonable probability of success here. Second, the Court considers whether Plaintiff has shown that he will suffer irreparable harm absent the injunctive relief he seeks. *Id.* Plaintiff points to "reputational damage and job-related consequences from potentially biased or inconsistent findings" and other potential harms that could result from the arbitration process, but these harms are speculative at best. (MSA at 3.) Plaintiff does not apprise the Court of any inevitable harm that will flow from

---

[3] The exact language Plaintiff refers to does not appear verbatim in the opinion, but the thrust of the statement comports with the holding of the Supreme Court such that the Court takes no issue with this inconsistency.

13

arbitration—indeed, Plaintiff may yet win at arbitration. Third, the Court assesses the possibility of harm to other interested persons from the grant or denial of the injunction. *Reilly*, 858 F.3d at 176. This factor is essentially neutral in this case. Granting the injunction would prohibit the union entities from pursuing their own adjudicatory and disciplinary processes, but the Court gives this little weight considering the union was apparently content to let the docket lie dormant for several years before initiating arbitration proceedings. Fourth and finally, the Court considers whether granting the injunction would be in the public interest. *Id.* Plaintiff's brief does not include any points or arguments addressing this prong of the analysis, and the Court concludes that in this case the public interest counsels in favor of denying the Motion and allowing the arbitration of these unrelated charges to proceed. Accordingly, the Motion to Stay Arbitration is hereby **DENIED**.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Declaratory Judgment, Motion for Protective Order, and Motion to Stay Arbitration are all **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Cari Fais, U.S.M.J.
      Parties